UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EMILIO CALDERON,

                Plaintiff,

v.                                       5:15-CV-1021
                                          (GTS)
CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                Defendant.
_____

APPEARANCES:                               OF COUNSEL:

OLINSKY LAW GROUP                 HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.       ELIZABETH L. ROTHSTEIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Emilio Calderon, ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 14.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on November 12, 1976. Plaintiff obtained a GED, completed specialized job training as an airline flight attendant, and has past work as an airport lead agent, a packer, a stocker, and a cleaner. Generally, Plaintiff's alleged disability consists of degenerative disc disease and depression.

   B.   **Procedural History**

On October 20, 2011, Plaintiff applied for Disability Insurance Benefits. (T. 19.)[1] On November 1, 2011, Plaintiff applied for Supplemental Security Income. (*Id.*) Both applications alleged disability beginning September 1, 2009. (*Id.*) Plaintiff's applications were initially denied on September 12, 2012, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On January 29, 2014, Plaintiff appeared in a hearing before the ALJ, Elizabeth Koennecke. (T. 32-49.) On April 21, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-31.) On June 22, 2015, the Appeals Council denied Plaintiff's request for review. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   **The ALJ's Decision**

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 21-29.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 1, 2009, the alleged onset date. (T. 18.) Second, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine was a severe impairment, but that

---

[1]   Page citations refer to the page numbers used on CM/ECF rather than the page numbers in the parties' respective motion papers.

Plaintiff's foot cramps, hand cramps, sore shoulders, stomach pain, headaches, fatigue, dry mouth, anxiety, depression, asthma, and neck impairment were not severe impairments. (T. 22-25.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 25-26.) The ALJ considered Listing 1.04 (disorders of the spine). (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "lift and/or carry ten pounds occasionally, sit for six hours in an eight-hour day, and stand and/or walk for two hours in an eight-hour day. This is consistent with the ability to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (T. 26-28.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 28-29.) Sixth, and finally, the ALJ found that there are other existing jobs in the national economy that Plaintiff could perform. (T. 29.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts three arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence. (Dkt. No. 10, at 14-22 [Pl.'s Mem. of Law].) Within this argument, Plaintiff argues that the ALJ (1) failed to consider the medical source statement from treating social worker Randall Stetson, L.C.S.W., (2) failed to follow the treating physician rule by discounting the opinion from treating physician Anjum Razzaq, M.D., and (3) should have recontacted Dr. Razzaq to request clarification or a more specific opinion. (*Id.*) Second, Plaintiff argues that the ALJ's credibility determination is unsupported by substantial evidence because the ALJ failed to analyze the required factors for evaluating credibility. (*Id.* at 22-23.) Third, and finally, Plaintiff argues that the ALJ's step five determination is unsupported by substantial evidence. (*Id.* at 23-24.)

Generally, Defendant makes four arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the Appeals Council properly declined to review the statement provided by Mr. Stetson. (Dkt. No. 14, at 6-10 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ appropriately evaluated the medical opinion evidence and the ALJ's RFC determination is supported by substantial evidence. (*Id.* at 10-15.) Third, Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 15-18.) Fourth, and finally, Defendant argues that the ALJ properly relied on the Medical-Vocational guidelines at step five. (*Id.* at 18-19.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability

5

> to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A. Whether the ALJ Erred in Assessing the Medical Opinions in Determining the RFC

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 6-10 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

### i. Social Worker Randall Stetson, L.C.S.W., and State Agency Mental Consultants Susan Donahoo, Psy.D., and Joan Kojis, Ph.D.

On January 14, 2014, Mr. Stetson completed an assessment of Plaintiff's mental work-related abilities and limitations due to her major depressive disorder and general anxiety. (T. 562-64.) Plaintiff argues that the ALJ failed to consider Mr. Stetson's opinion, namely that Plaintiff had "serious" mental limitations and was unable to maintain attention for two hour segments, complete a workday without interruptions from psychologically based symptoms, and would likely be off task more than twenty percent of the workday. (Dkt. No. 10, at 14-17 [Pl.'s Mem. of Law].) However, it does not appear that the ALJ had received Mr. Stetson's opinion when her decision was rendered on April 21, 2014. (T. 4, 19-35, 246.) The record indicates that Plaintiff submitted Mr. Stetson's evaluation to the Appeals Council as "new and material

evidence" on August 25, 2014. (T. 252) (enclosing "a pertinent medical source statement relating to Claimant's recent treatment at Bienstar").

If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only when it relates to the period on or before the date of the ALJ's decision. 20 C.F.R. §§ 404.970(b), 404.976(b)(1); 416.1470(b), 416.1476(b)(1); HALLEX I–3-3-6, 1993 WL 643129 (Dec. 27, 2012); *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). The Appeals Council will evaluate the entire record, including any new and material evidence submitted, if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970(b), 416.1470(b); HALLEX I–3-3-6; *Paradise v. Comm'r*, 13-CV-0828, 2014 WL 4384230, at *2 (N.D.N.Y. Sept. 3, 2014). The weight of the evidence means that it is "more likely than not" that the totality of the evidence, including the additional evidence, would change the ALJ's actions, findings, or conclusion. HALLEX I-3-9-4, 2013 WL 643197 (Mar. 8, 2013). When the Appeals Council denies review after considering new evidence, the reviewing court will "simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez*, 77 F.3d at 45.

Here, the Appeals Council added Mr. Stetson's opinion to the record and denied Plaintiff's request for review on June 22, 2015. (T. 1-4). Mr. Stetson's opinion, dated January 14, 2014, related to the period on or before the ALJ's decision was rendered on April 21, 2014. (19-35, 562-64.) However, for the following reasons, the ALJ's conclusion is not contrary to the weight of the evidence, including Mr. Stetson's opinion, and is supported by substantial evidence.

First, as a social worker, Mr. Stetson is not an acceptable medical source under the regulations. 20 C.F.R. §§ 404.1513(a)(1-5), 416.1913(a)(1-5) (identifying the five types of acceptable medical sources as follows: (1) licensed physicians, (2) licensed or certified psychologists, (3) licensed optometrists, (4) licensed podiatrists, and (5) qualified speech-language pathologists). The ALJ must consider RFC assessments made by acceptable medical sources and *may* consider opinions from "other sources," such as social workers, to show how a plaintiff's impairments may affect his or her ability to work. 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). However, an opinion from a social worker is not a medical opinion that is entitled to any particular weight under the regulations. 20 C.F.R. §§ 404.1513(a), 404.1527(b), 416.1913(a), 416.927(b).

Second, Plaintiff does not point to any evidence that supports Mr. Stetson's opinion. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (stating that, the more a source presents evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be afforded to the opinion). Moreover, in determining that Plaintiff did not have a severe mental impairment, the ALJ noted that Plaintiff was neither examined nor diagnosed by a psychiatrist or psychologist at Bienstar Counseling Center, where Mr. Stetson was his counselor. (T. 24.) The ALJ further noted that there is no mental status examination in Plaintiff's mental health treatment notes. (*Id.*)

Third, Mr. Stetson's opinion is inconsistent with other substantial evidence, including the only opinions of Plaintiff's functioning from acceptable medical sources, namely the opinions from Dr. Donahoo and Dr. Kojis. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (stating that, generally, the more consistent an opinion is with the record as a whole, the more weight will be afforded to the opinion). Dr. Donahoo opined that Plaintiff had no severe mental impairments;

9

had only mild limitation in activities of daily living; social functioning; and concentration, persistence or pace; and had no episodes of extended decompensation. (T. 563-64.) Additionally, Dr. Kojis opined that Plaintiff had no severe mental impairments; no limitation in activities of daily living and social functioning; only mild limitation in concentration, persistence or pace; and had no episodes of extended decompensation. (T. 292-300.)

Finally, Mr. Stetson's opinion is unsupported by, and inconsistent with, Plaintiff's reported mental activities. The ALJ noted that Plaintiff reported that he could shop in stores, pay bills, count change, and handle a savings account. (T. 24-25.) Although Plaintiff reported that he did not handle stress "very well," he also reported that he regularly socialized with others, handled changes in a routine fairly well, and reported no problems getting along with authority figures. (*Id.*)

For these reasons, the ALJ's determination that Plaintiff had no severe mental impairment or work-related limitation is supported by substantial evidence, including Dr. Donahoo and Dr. Kojis' opinions. Moreover, even considering Mr. Stetson's opinion, the ALJ's conclusion is not contrary to the weight of the evidence.

### ii.     State Agency Medical Consultant Syd Foster, D.O.

On December 16, 2011, Dr. Foster reviewed Plaintiff's medical records and provided an opinion of Plaintiff's physical residual functional capacity. (T. 314-21.) Dr. Foster indicated that Plaintiff's primary diagnosis was lower spine degenerative disc disease with a secondary diagnosis of GERD. (T. 314.) Dr. Foster opined that Plaintiff could sit for about six hours, stand/walk for at least two hours, occasionally lift/carry ten pounds, and frequently lift/carry less than ten pounds in an eight-hour workday. (T. 311.) Dr. Foster further opined that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (T. 316-18.) In

10

conclusion, Dr. Foster opined that Plaintiff was capable of sedentary work, with position changes accommodated by traditional break periods. (T. 321.)

The ALJ afforded "some weight" to Dr. Foster's opinion, reasoning that it is a medical opinion and is consistent with other medical evidence of record, including examination findings that Plaintiff's gait was normal and Dr. Razzaq's opinion that Plaintiff should not lift anything heavy. (T. 28.) Moreover, the ALJ found that Dr. Foster's opinion was consistent with Plaintiff's reported activities of daily living. (*Id.*) For example, the ALJ noted that Plaintiff reported that he could cook, prepare meals, dust, sweep, do laundry, drive, shop in stores for up to two hours at a time, and reported that he regularly socialized with others. (T. 24, 28.)

First, the Court notes that ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at \*9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Second, the ALJ properly applied the regulations in evaluating Dr. Foster's opinion. As discussed above, the ALJ considered Dr. Foster's professional credentials, and the consistency of his opinion with other substantial evidence, including Dr. Razzaq's opinion that Plaintiff should not lift anything heavy and Plaintiff's reported activities of daily living. (T. 17-23); 20 C.F.R.

§§ 404.1527(c), 416.927(c). Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where the plaintiff challenged ALJ's failure to review each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

For these reasons, the ALJ's physical RFC determination is supported by substantial evidence, including Dr. Foster's opinion, and remand is not required on this basis.

### iii. Treating Physician Anjum Razzaq, M.D.

On October 29, 2012, Dr. Razzaq submitted a letter stating that Plaintiff "has multiple medical problems [sic] including chronic back pain with L5-S1 radiculopathy, bilateral supraspinatus tendinitis, asthma, anxiety disorder, lumbar disc herniation, gastric duodenal ulcer, gastric erosions, [and] vitamin D deficiency." (T. 395.) Dr. Razzaq opined that because of Plaintiff's medical conditions, particularly chronic back pain and lumbar disc disease, "he is unable to engage in any gainful employment." (*Id.*) Moreover, in his treatment notes, Dr. Razzaq opined that Plaintiff should "not . . . lift anything heavy." (T. 364.)

The ALJ afforded "no evidentiary weight" to Dr. Razzaq's opinion that Plaintiff is unable to engage in gainful employment because it is not a function-by-function assessment of Plaintiff's limitations and abilities and is an opinion on the ultimate issue of disability, which is reserved for the Commissioner. (T. 28.) The ALJ afforded "some weight" to Dr. Razzaq's opinion that Plaintiff should not lift anything heavy because it is a treating source medical opinion relating to a functional limitation. (*Id.*) Moreover, the ALJ found that the opinion was consistent with Dr. Foster's opinion discussed above in Part III.A.ii. of this Decision and Order. (*Id.*)

12

First, the Court finds that the ALJ properly afforded no weight to Dr. Razzaq's statement that Plaintiff is unable to engage in gainful employment because it is an opinion on the ultimate issue of disability. (T. 28.) A physician's statement that a plaintiff is disabled is a statement on an issue reserved for the Commissioner and is never entitled to controlling weight or special significance. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996); *see also Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

Second, the ALJ properly applied the regulations in evaluating Dr. Razzaq's opinion. As discussed above, the ALJ considered Dr. Razzaq's professional credentials, treatment relationship with Plaintiff, and the consistency of his opinion with other record evidence pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c), including Dr. Foster's opinion. (T. 22-28.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to discuss each and every factor of the regulation. *Atwater*, 512 F. App'x at 70.

Finally, the Court turns to Plaintiff's argument that the ALJ should have recontacted Dr. Razzaq to request clarification or request a function-by-function analysis of Plaintiff's physical limitations. (Dkt. No. 10, at 19-22 [Pl.'s Mem. of Law].) Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1). Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). However, reviewing courts hold that an ALJ is not required to seek additional information absent

13

"obvious gaps" in the administrative record that preclude an informed decision. *Rosa*, 168 F.3d at 79 n.5; *see also Aldrich v. Astrue*, 08-CV-0402, 2009 WL 3165726, *7 (N.D.N.Y. Sept. 28, 2009) ("A treating physician is recontacted only in situations when the evidence received from the treating physician or other medical sources is inadequate for the ALJ to determine whether Plaintiff is disabled.").

Here, Dr. Razzaq's opinion was not ambiguous and the record contained a complete function-by-function opinion of Plaintiff's physical abilities and limitations from Dr. Foster. (T. 314-21, 364, 395.) Because the record evidence was adequate to permit the ALJ to make a disability determination, the ALJ was not required to recontact Dr. Razzaq. *See Carvey v. Astrue*, 389 F. App'x 50, 53 (2d Cir. 2010) ("Because the record evidence was adequate to permit the ALJ to make a disability determination, we identify no merit in . . . [the plaintiff's] claim that the ALJ was obligated *sua sponte* to recontact the treating physicians."); *Tankisi v. Comm'r,* 521 F. App'x 29, 34 (2d Cir. 2013) ("Given the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity.").

For these reasons the Court finds that the ALJ's assessment of Dr. Razzaq's opinion was supported by substantial evidence, and the ALJ was not required to recontact Dr. Razzaq.

**B.     Whether the ALJ's Credibility Analysis Was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 15-18[Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* (citing §§ 404.1529[c][3][i]-[vii], 416.929[c][3][i]-[vii]). Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms."

*Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms are not entirely credible. (T. 26.) Throughout the decision, the ALJ articulated the inconsistencies that she considered in assessing the allegations of Plaintiff's symptoms, and in determining that Plaintiff is not as limited as alleged.

First, the ALJ considered medical evidence of record that was inconsistent with Plaintiff's allegations of disabling symptoms, including the physical opinion of Dr. Foster and the mental opinions of Dr. Donahoo and Dr. Kojis discussed above in Part III.A. of this Decision and Order. (T. 22-28.)

Second, the ALJ considered Plaintiff's treatment history and measures that he took to relieve his symptoms, and found that Plaintiff's treatment history does not support his allegations regarding the severity of his condition. (T. 27.) The ALJ noted that Plaintiff had facet joint injections in 2012 and a lumbar transforaminal block injection in February 2014, but his treating physician did not suggest that Plaintiff required surgery. (*Id.*) The ALJ noted that Plaintiff only attended physical therapy for four sessions in 2010 and had improvement, and later told his provider that he did not want to attend physical therapy because of a bad experience in the past. (*Id.*) However, the ALJ noted that Plaintiff's physical therapy record indicated that Plaintiff failed to attend most of his scheduled sessions due to transportation issues. (*Id.*) (referencing T. 257.) The ALJ further noted that, though Plaintiff was prescribed a cane, his gait was normal during examinations in 2013 and 2014 and he did not use the cane as he walked out of the hearing room. (T. 27-28.)

Third, the ALJ considered inconsistencies between Plaintiff's activities of daily living and his allegations of disabling symptoms. (T. 24-25, 28.) Regarding Plaintiff's mental functioning, the ALJ noted that Plaintiff reported that he could pay bills, count change, and handle a savings account. (T. 24-25.) Although Plaintiff reported that he did not handle stress "very well," he also reported that he regularly socialized with others, handled changes in a routine fairly well, and reported no problems getting along with authority figures. (*Id.*) Regarding Plaintiff's physical functioning, the ALJ noted that Plaintiff reported that he could cook, prepare meals, dust, sweep, do laundry, drive, and shop in stores for up to two hours at a time. (T. 24, 28.)

Finally, when the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). For these reasons, the Court rejects Plaintiff's argument that the ALJ's credibility analysis was "devoid of any reasons or analysis as to why Plaintiff's subjective testimony was not credited." (Dkt. No. 10, at 22-23 [Pl.'s Mem. of Law].)

The Court finds that the ALJ's credibility assessment is supported by substantial evidence and remand is not required on this basis.

### C. Whether the ALJ's Step Five Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 17-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step five of the sequential process, the burden shifts to the Commissioner to establish that there is other work that exists in significant numbers in the national economy that a plaintiff can perform based on the plaintiff's RFC, age, education, and past relevant work. *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004). The Commissioner can usually establish that there is other work that a plaintiff can perform by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from nonexertional limitations that significantly limit the plaintiff's employment opportunities, exclusive reliance on the Grids is inappropriate. *Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]). However, "the mere existence of a non-exertional limitation does not automatically preclude reliance on the guidelines." *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp,* 802 F.2d at 603.) A plaintiff's range of potential employment is significantly limited when the plaintiff "suffers from the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Baldwin*, 2009 WL 4931363, at *27.

As discussed above in Part III.A. of this Decision and Order, the ALJ's RFC determination was based on substantial evidence, including the mental opinions of Dr. Donahoo and Dr. Kojis, and the physical opinion of Dr. Foster. (T. 22-28.) Therefore, the ALJ properly determined that Plaintiff's RFC did not include nonexertional limitations and properly relied upon the Grids at step five. (T. 26-28); *Zabala v. Astrue,* 595 F.3d 402, 409 (2d Cir. 2010).

For these reasons, the ALJ's step five determination was supported by substantial evidence, and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: December 7, 2016
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge